# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL ANDRIOLA, C.P.A.<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PKFOD HOLDINGS, LLC,<br>PKF O'CONNOR DAVIES, LLP, and<br>PKF O'CONNOR DAVIES ADVISORY, LLC,<br><br>　　　　　Defendants. | Civil Action No. _____<br><br>Hon. _____, U.S.D.J.<br>Hon. _____, U.S.M.J.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Andriola, by and through his attorneys Spiro Harrison & Nelson, files this Complaint against Defendants PKFOD Holdings, LLC ("PKFOD Holdings"), PKF O'Connor Davies, LLP ("PKFOD LLP") and PKF O'Connor Davies Advisory, LLC, ("PKFOD Advisory") (together, "PKFOD") and alleges as follows:

## INTRODUCTION

1.　　This is an action to recover compensatory and punitive damages and all other remedies in connection with PKFOD's unlawfully retaliating against Mr. Andriola in violation of the False Claims Act, 31 U.S.C. § 3730(h) (the "FCA"), the New Jersey Conscientious Employee Protection Act ("CEPA") and applicable New Jersey law. Plaintiff also seeks reimbursement of his attorney's fees, costs and expenses pursuant to those statutes.

## SUMMARY OF ALLEGATIONS

2.　　At all times relevant to this action, Plaintiff Michael Andriola was a Certified Public Accountant who resided and worked in New Jersey. He was a partner at Defendant

PKFOD LLP, a public accounting firm, and a member of Defendants PKFOD Holdings LLC and PKFOD Advisory LLC.

3. At times, PKFOD provided accounting and other services to certain corporations owned and/or controlled by Nelson Ferreira ("Ferreira"). Plaintiff served as the relationship partner and was the senior accountant providing services to these corporations. Ferreira's primary and largest business was Ferreira Construction Co., Inc. ("FCC") of which he was the President and Chief Executive Officer.

4. FCC's website stated that "Nelson has established the Ferreira Family of Companies including Vanguard Energy Partners, American Pile and Foundation, Ferreira Power South, Ferreira UTEC, Ferreira Power Group, Ferreira Power West, and Patriot Line Clearing."

5. Ferreira also owned and/or controlled additional corporate entities, including (but not limited to) Ferreira Construction Trucking, Inc., Ferreira Power Group, LLC, Ferreira Power West, LLC, NatNel LLC, Vanguard Energy Partners, Valiant Energy Services, Valiant Power South, LLC, and Valiant Power Group/S.M. Electric. Ferreira also owned and controlled a significant number of LLCs which held business-related real estate assets. Ferreira owned-and-controlled corporate entities are referred to herein as the "Ferreira Entities."

6. In or about early 2021, Plaintiff was conducting a routine audit of Valiant Energy Services ("VES") and preparing its financial statement.

7. In doing that work, Plaintiff discovered that VES had obtained a Government-guaranteed Paycheck Protection Program ("PPP") loan in 2020.

8. Plaintiff was knowledgeable about PPP loans and had advised several PKFOD clients (though none of the Ferreira Entities) as to their eligibility to obtain them. He knew that the corporate group comprising VES and the other Ferreira Entities (as well as other corporate

entities owned in whole or in part by Ferreira) were far too large in headcount and financial size to qualify for such loans.

9.  When Plaintiff brought this to the attention of Ferreira management (including Ferreira himself) he learned that other Ferreira Entities had also obtained PPP loans, and that management was satisfied that if the companies had not been eligible, the lender would not have extended the loans.  Plaintiff included a note in the VES audited financial statement indicating that the PPP loan might not be forgiven, and discussed this with a fellow partner at PKFOD who was the assigned independent reviewer for the financial statement.

10.  In or about July 2023, Plaintiff, through a Limited Liability Corporation that he had formed, filed a *qui tam* lawsuit against Ferreira Entities VES, American Pile and Foundation ("APF"), and Valiant Power Group ("VPG"), all of which received PPP loans, as well as FCC and Ferreira personally (collectively, the "Ferreira Defendants"), alleging that they had violated the False Claims Act (and/or conspired to do so) in applying for the PPP loans and requesting forgiveness thereof.

11.  After investigating, the Government declined to intervene in the lawsuit, and Plaintiff proceeded to litigate the unsealed case against the Ferreira Defendants.

12.  In or about December 2024, counsel for the Ferreira Defendants communicated with PKFOD to inform it that Plaintiff had sued them, and falsely alleged among other things that Plaintiff had violated professional ethics and duties by wrongfully obtaining privileged and confidential information and documents of the Ferreira Entities while providing accounting services to VES, had used them to file the Qui Tam Lawsuit, and further violated ethics and duties in certain post-filing communications with Ferreira management and representatives.

13. PKFOD management then confronted Plaintiff with these accusations and demanded to know if he had committed these allegedly improper acts.

14. In late December 2024 and again in January 2025, counsel for Plaintiff communicated with PKFOD management, describing the circumstances of Plaintiff's filing of the lawsuit, his post-filing communications, and explaining that he did not violate any professional ethics or duties. Counsel also warned PKFOD that any adverse employment action against Plaintiff could be actionable as unlawful retaliation.

15. Nonetheless, on or about January 31, 2025, PKFOD suspended Plaintiff without pay or benefits indefinitely.

16. Since PKFOD suspended Plaintiff, its partners, employees and/or agents have made false and misleading statements to employees, clients and third parties which have damaged and will continue to damage Plaintiff's professional reputation, which he has assiduously built over decades.

17. Plaintiff brings this action in response to PKFOD's unlawful and blatant acts of retaliation for his having filed a *qui tam* lawsuit against the Ferreira Defendants.

**JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS**

18. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 31 U.S.C. § 3730(h) of the False Claims Act.

19. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case and controversy under Article III of the United States Constitution.

20. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants maintained offices and conducted business in this District, and because their wrongful conduct impacted and adversely affected Plaintiff in this District.

21. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

## PARTIES

22. At all times relevant to this action, Plaintiff Michael Andriola was a Certified Public Accountant who resided in New Jersey. He was a partner at Defendant PKF O'Connor Davies, LLP, and a member of PKFOD Holdings, LLC and PKF O'Connor Davies Advisory, LLC. He reported to PKFOD's Cranford, New Jersey office.

23. At all times relevant to this action, Defendant PKFOD Holdings, LLC was a Delaware Limited Liability Company incorporated on or about October 4, 2024. It was the parent corporation of PKFOD Defendant PKF O'Connor Davies, LLP and PKF O'Connor Davies Advisory, LLC.

24. At all times relevant to this action, Defendant PKF O'Connor Davies, LLP was a licensed public accounting firm that provided attest services.

25. At all times relevant to this action, Defendant PKF O'Connor Davies Advisory, LLC was a Delaware Limited Liability Company incorporated on or about October 4, 2024. It provided tax and advisory services.

26. Although PKFOD LLP and PKFOD Advisory were separate entities, they operated in conjunction and shared common management and office facilities. PKFOD LLP

partners, including Plaintiff, provided services through both PKFOD LLP and PKFOD Advisory. For this reason, Defendants will be referred to collectively herein as PKFOD.

27. PKFOD's headquarters were located at 500 Mamaroneck Avenue, Harrison, New York 10528. It also maintained offices in this District at 20 Commerce Drive, Suite 301, Cranford, New Jersey 07016, 150 Clove Road, 11th Floor, Little Falls, New Jersey 07424 and 300 Tice Boulevard, Suite 315, Woodcliff Lake, New Jersey 07677.

## SPECIFIC ALLEGATIONS

### Defendants were Plaintiff's Employers for Purposes of the FCA's Retaliation Prohibition and CEPA

28. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of 31 U.S.C. § 3730(h) and CEPA.

29. As alleged, although PKFOD LLP and PKFOD Advisory were separate entities, they operated in conjunction and shared common management and office facilities. PKFOD LLP partners, including Plaintiff, provided services through both PKFOD LLP and PKFOD Advisory.

30. PKFOD LLP was a partnership with over 200 partners, of which Plaintiff was one. His equity interest in PKFOD LLP was less than one percent. He generated annual revenues far less than one percent of PKFOD's approximately $400 million annual revenues.

31. PKFOD was managed by an executive committee of partners led by a Chief Executive Officer. Each office was managed by one or more partners in charge. Plaintiff was neither a member of the executive committee nor was he a partner in charge of his office.

32. PKFOD's CEO and executive committee made the decisions concerning the employment of PKFOD LLP partners, including hiring, termination, and terms and conditions of

6

employment including compensation. Although Plaintiff was a partner, he had no control over the employment of any other partner, himself included.

33. PKFOD's CEO and executive committee alone set the rules and regulations of the partners' work, including book requirements, billable hour requirements, and other requirements and goals.

34. Plaintiff reported to the partner(s) in charge of PKFOD's Cranford, New Jersey office, and ultimately to the executive committee and CEO. Notably, Plaintiff possessed essentially no control over the direction of PKFOD.

35. Plaintiff's work was directly supervised by the partner(s) in charge of the Cranford, New Jersey office. Among other things, the partner(s) in charge met quarterly with Plaintiff to review his performance, including receivables, work in progress, and client relationships. A member of the executive committee and the partner(s) in charge met annually with Plaintiff to more fully review and evaluate his performance and discuss requirements and goals.

36. Although Plaintiff had an equity share in PKFOD LLP as a partner, he was not entitled to a share of PKFOD's profits. The PKFOD executive committee set his compensation and determined any bonus or equity awards in consultation with the office partner(s) in charge, which decisions had to be approved by the CEO.

**Plaintiff Discovers and Reports Fraud by the Ferreira Defendants to the U.S. Government**

37. At all times relevant to this action, FCC was a construction company based in Branchburg, New Jersey.

38. APF was a site preparation (pile-driving and drilling) contractor based in Branchburg, New Jersey.

39. VES was an electrical construction company based in Allentown, Pennsylvania.

40. VPG was an electrical construction contractor based in Rahway, New Jersey.

41. In or about 2020, with the knowledge and approval of Ferreira and his CFO (though without having consulted with Plaintiff), APF, VES and VPG submitted Small Business Administration ("SBA") applications for and received PPP loans.

42. Among other things, the applications (which were certified to be true and complete) falsely stated that APF, VES and VPG were eligible to receive loans, in part by omitting their affiliation with FCC and other Ferreria-owned and/or controlled entities. If such affiliations had been truthfully disclosed, APF, VES and VPG would have been rendered too large in both headcount and financial size to qualify as "small business concerns" eligible to participate in the PPP.

43. In reliance on these materially false statements and certifications, a lender extended the PPP loans to APF, VES and VPG totaling over $9 million.

44. In or about 2021, APF, VES and VPG sought and obtained forgiveness of the PPP loans, by making further false statements and certifications, including that the borrowers had been eligible to receive the loans.

45. In further reliance on the borrowers' false statements and certifications, the lender forgave the PPP loans, the reimbursement for which cost the United States approximately $9.5 million.

46. In or about early 2021, Plaintiff was conducting a routine year-end audit of VES and preparing its financial statement. He noticed that VES had received a PPP loan. He asked Jerry Killian, who served as Chief Financial Officer for the Ferreira Entities, how VES had received a loan, because Plaintiff knew that the size of the Ferreira corporate group would have

rendered VES (and any other Ferreira entity) ineligible.[1] Killian responded that the bank had approved the loan, so the company ran with it. He told Plaintiff that other Ferreira Entities including APF had applied for and received PPP loans.

47. PKFOD's auditing procedures required an independent partner to review and approve any audited financial statement before finalizing it. Following these procedures, Plaintiff (who was concerned about the possibility that the Government could deny forgiveness of an improperly obtained PPP loan of material size) included a note in the financial statement indicated that VES had received a $4,551,600 PPP loan and had submitted a forgiveness application which the lender had approved and forwarded to the SBA, and discussed this with Jeffrey Gittler, the partner assigned to review the VES financial statement.

48. Accordingly, the note indicated that "[i]n anticipation of the PPP loan being forgiven the Company has elected to follow the [IAS 20] guidance [which] allows a forgivable loan from government to be treated as a reduction of salary expenses." However, while advising that "management believes all loan forgiveness conditions have been met," the note warned that "there is no guarantee that the SBA will ultimately forgive a portion or the entire amount of the loan. Consequently, management's estimate of forgiveness could change and such amount could be material."

49. Plaintiff consulted PPP loan information and confirmed that APF and also VPG had obtained loans. On or about July 18, 2023, through a Delaware limited liability corporation he had formed, Plaintiff filed a qui tam lawsuit against the Ferreira Defendants alleging that VES, APF and VPG obtained PPP loans by fraudulently omitting material information about the Ferreira entities and other Ferreira-owned affiliates, knowing that VES, APF and VPG were

---

[1] All oral statements herein are recounted in substance and in part.

ineligible for PPP loans due to the size of the corporate group. *United States ex rel. CLIP LLC v. Ferreira Construction Co., Inc. et al.*, Civ. A. No. 23-3834 (GC) (D.N.J.) (the "Qui Tam Lawsuit"). The Qui Tam Lawsuit alleged that the Ferreira Defendants have violated the federal False Claims Act and/or conspired to do so in applying for the loans and seeking (and obtaining) forgiveness thereof.

50. On or about September 5, 2024, the Government notified the Court that it was electing to decline intervention in the Qui Tam Lawsuit. After the Court unsealed the case, Plaintiff served the Qui Tam Lawsuit on the Ferreira Defendants.

51. On or about December 17, 2024, counsel for the Ferreira Entities sent a letter to the General Counsel of PKFOD, which upon information and belief informed him of the Qui Tam Lawsuit and falsely claimed that Plaintiff had wrongfully obtained privileged and confidential information and documents of the Ferreira Entities while providing accounting services to VES and had used them to file the Qui Tam Lawsuit. Upon information and belief, Ferreira's counsel also falsely accused Plaintiff of violating the Ferreira Entities' attorney-client privilege in certain communications Plaintiff had with Mr. Killian and others in or about September 2023.

52. On or about December 18, 2024, counsel for the Ferreira Entities sent Plaintiff's counsel (three attorneys/firms) a letter falsely claiming that Plaintiff and his counsel had "improperly pierced our Clients' attorney-client privilege and obtained our Clients' privileged and confidential information" in connection with the Qui Tam Lawsuit. Among other things, Ferreira's counsel accused Plaintiff's counsel of violating professional conduct rules and demanded that they and Plaintiff return and destroy the purportedly privileged and confidential documents.

53. On or about December 18, 2024, the General Counsel contacted Plaintiff, informed him of the PKFOD letter and asked him if he had indeed filed the Qui Tam Lawsuit based on confidential information about the Ferreira Entities. On behalf of PKFOD, he threatened Plaintiff with termination or suspension.

54. On or about December 18, 2024, the General Counsel contacted counsel for Plaintiff and likewise demanded to know how Plaintiff had obtained information to file the Qui Tam Lawsuit.

55. On or about January 9, 2025, counsel for the Ferreira Entities sent PKFOD another letter again demanding a return of any and all purportedly privileged and confidential information, demanding a response, and threatening to sue.

56. On or about January 14, 2025, the General Counsel advised Plaintiff that he believed Plaintiff had violated professional ethics rules, fiduciary duties to PKFOD and its clients, PKFOD internal rules and procedures, and terms of his partnership and other agreements with PKFOD. He again told Plaintiff that PKFOD was considering terminating him or placing him on unpaid leave.

57. On or about January 15, 2025, an attorney for Plaintiff communicated with the General Counsel to discuss PKFOD's and the Ferreira counsel's accusations. Plaintiff's counsel followed up with a letter dated January 24, 2025 describing the circumstances of Plaintiff's discovery of the Ferreira Entities' fraud and his communications with Mr. Killian and others, and explaining that Plaintiff had not violated any professional or ethical rules. The letter also warned that any adverse employment action by PKFOD, including suspension without pay, could be actionable under the False Claims Act, CEPA, and/or other laws.

58. On or about January 31, 2025, the General Counsel, expressly on behalf of PKFOD Holdings, PKFOD Advisory and PKFOD LLP, sent Plaintiff a letter "inform[ing] [Plaintiff] that there is substantial evidence of serious departures by you of professional and ethical standards, as well as PKFOD policies and procedures, in connection with the audit of the financial statements of Valient [*sic*] Energy Services LLC for the year ended December 31, 2020, for which you were the Engagement Partner. PKFOD indefinitely suspended Plaintiff without pay or benefits, and furthermore threatened to revoke certain compensation and equity grants he had received in or about November 2024 in connection with an acquisition of PKFOD.

59. Since PKFOD suspended Plaintiff, its partners, employees and/or agents have been advising Plaintiff's clients and colleagues that he is on a leave of absence. Such a leave would be highly unusual for an actively practicing CPA during tax season. Accordingly, Plaintiff has learned that his clients and colleagues wrongly assume he is suffering from serious physical or mental health problems or is facing potential criminal charges. Such false assumptions foreseeably caused by PKFOD's wrongful suspension have damaged and will continue to damage Plaintiff's professional reputation, which he has assiduously built over decades.

## CLAIMS FOR RELIEF

### COUNT I
False Claims Act:
Retaliation
31 U.S.C. § 3730(h)

60. Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

61. As specifically set forth in the foregoing Paragraphs, Defendants discharged, demoted, threatened, harassed, and/or discriminated against Plaintiff in the terms and conditions

of his employment, because Plaintiff lawfully reported what he reasonably believed to be fraudulent conduct or wrongdoing, in violation of 31 U.S.C. § 3730(h).

62. As a direct result of Defendants' violations, Plaintiff has suffered injury, among other things in the form of lost compensation and benefits, and non-economic damages for emotional distress and other pain and suffering. Plaintiff seeks compensatory damages and other appropriate statutory relief pursuant to this Section.

## **COUNT II**
New Jersey Conscientious Employee Protection Act
N.J.S.A. 34:19-1 *et seq.*

63. Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

64. At all times relevant to this action, each Defendant was an employer as that term is defined in N.J.S.A. 34:19-2(a).

65. At all times relevant to this action, Plaintiff was an employee of each Defendant as that term is defined in N.J.S.A. 34:19-2(b).

66. During the course of Plaintiff's employment, Plaintiff objected to activities and practices of VES, which had a business relationship with PKFOD, that he reasonably believed were fraudulent, in violation of public policy, and/or in violation of federal law.

67. As a direct result of this, Defendants took retaliatory action against Plaintiff, including suspending Plaintiff without pay or benefits.

68. Defendants are liable to Plaintiff for unlawful retaliation and violation of CEPA pursuant to N.J.S.A. 34:19-1 *et seq.*

69. As a proximate result of the acts and omissions set forth herein, Plaintiff has sustained damages.

## COUNT III
Wrongful Discharge

70. Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

71. During the course of his employment, Plaintiff reported and complained about VES's unlawful behavior. Defendants learned of Plaintiff's reporting and suspended him without pay or benefits indefinitely as a result thereof.

72. Defendants' acts constituted a wrongful discharge in violation of public policy (among other things, the public benefit in reporting Government fraud to the United States Department of Justice).

73. As a proximate result of the acts and omissions set forth herein, Plaintiff has sustained damages.

## DEMANDS FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, ordering that:

a. Plaintiff be awarded such relief as is appropriate under the provisions of 31 U.S.C. § 3730(h) for retaliatory discharge, including:

(1) two times the amount of back pay (including the value of lost benefits and other compensation) plus interest;

(2) compensation for special damages sustained by Plaintiff in an amount to be determined at trial;

(3) litigation costs and reasonable attorneys' fees; and

(4) such punitive damages as may be awarded under applicable law;

d. Plaintiff be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. § 3730(o) and any other applicable provision of the law; and

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants on Counts II and III, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues.

DATE:  March 17, 2025

SPIRO HARRISON & NELSON

_____
Eric H. Jaso
363 Bloomfield Avenue
Suite 2C
Montclair, New Jersey 07042
(973) 232-0881
ejaso@shnlegal.com

*Attorneys for Plaintiff*