**SPIRO HARRISON & NELSON**

Eric H. Jaso, Esq.
ejaso@shnlegal.com

363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Direct Dial: (973) 310-4026

July 23, 2024

**VIA ECF**

Hon. Georgette Castner
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      RE:    *Andriola v. PFKOD Holdings, LLC, et al.*, Civ. A. No. 3:25-cv-01908-GC-JBD
             Plaintiff's Pre-Motion Letter Response

Dear Judge Castner:

We represent Plaintiff Michael Andriola ("Plaintiff") in the above-captioned matter. In compliance with the Court's Individual Preferences concerning dispositive motions, this letter serves as Plaintiff's response to Defendants' pre-motion letter, which was filed with the Court on July 14, 2025. ECF at 7.

    1.    *The Court Should Convert Defendants' Motion to Dismiss to a Summary Judgment Motion Because Defendants Rely Upon an Extrinsic Document.*

When evaluating whether a valid arbitration agreement exists, a court must initially determine whether to apply a Rule 12(b)(6) motion to dismiss standard or a Rule 56 summary judgment standard to a party's motion to compel arbitration. *Guidotti v. Legal Helpers Debt Resolution., L.L.C.*, 716 F.3d, 771-76 (3d Cir. 2013). The court must decide "whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) (citing *Guidotti*, 716 F.3d at 774-76). Generally, when considering documents outside of a complaint, a court should convert a motion to dismiss into a motion for summary judgment. The Federal Rules of Civil Procedure specifically provide for such conversion: "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]." Fed. R. Civ. P. 12(d). *See also*, *e.g.*, *United States v. Est. of Elson*, 421 F. Supp. 3d 1, 5 (D.N.J. 2019) (denying the defendants' motions to dismiss, construed as motions for judgment on the pleadings, to the extent they were based on extrinsic documents).

Here, Defendants rely on the Partner Services Agreement (the "Agreement"), a document not attached to the pre-motion letter and outside the Complaint, which does not rely on the Agreement explicitly or even inferentially. *Compare Harper v. Amazon.com Servs. Inc.*, No. CV 19-21735 (FLW), 2022 WL 17751465, at *5 (D.N.J. Dec. 19, 2022) (considering employment agreement in a motion to compel where complaint explicitly relied upon it).

### 2. The Agreement's Arbitration Provision Fails to Cover Plaintiff's FCA Retaliation Claim Because the Claim Exists Independently from the Agreement.

Defendants acknowledge that "courts outside this Circuit have admittedly refused to compel arbitration when a plaintiff is alleging both a *qui tam* and 31 U.S.C. § 3730(h) retaliation cause of action against the defendant employer." ECF No. 7 at 3. For example, the Sixth Circuit has held that an arbitration provision does *not* cover a plaintiff's FCA retaliation claim because the claim exists independently from the employment agreement. *See*, *e.g.*, *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 355-56 (6th Cir. 2022) (holding that an FCA retaliation claim has "nothing to do with" the employment agreement itself: "[T]he arbitration clause in the present case, which covers only disputes arising from or connected with the Employment Agreement, plainly does not cover plaintiff's FCA retaliation claim"); *U.S. ex rel. Paige v. BAE Sys. Tech. Sols. & Servs., Inc.*, 566 F. App'x 500, 504 (6th Cir. 2014) ("The FCA retaliation claim is not a claim for violation of the Employment Agreement; it is completely separate from the contract and asserts an independent claim that would exist even without the contract.").

Here, the arbitration provision is nearly identical to the ones in *Dorsa* and *BAE Systems*, covering "any controversy or claim *arising out of this Agreement*." ECF No. 7 at 2-3 (emphasis added); *compare BAE Sys.*, 566 F. App'x at 502 and *Dorsa*, 33 F.4th at 355. Thus, the arbitration provision does *not* cover Plaintiff's FCA retaliation claim because it is *not* a controversy or claim arising out of the Agreement. *Dorsa*, 33 F.4th at 356 (arbitration clause failed to encompass retaliation claim which "does not arise out of or in connection with" the employment agreement). Rather, the retaliation claim arises from (and relates to) Plaintiff's pending *qui tam* lawsuit before this Court, as Defendants acknowledge. ECF No. 7 at 1 n. 1.

Moreover, the arbitration provision in the Agreement does not contain the language "related to," further evidencing Plaintiff's claim exists independently from the Agreement. Defendants' reliance on *Harper v. Amazon.Com Servs. Inc.* is misplaced. There, the court found that the arbitration provision was ambiguous for Federal Arbitration Act purposes but ultimately held the arbitration agreement enforceable under New Jersey law. 2022 WL 17751465, at *3, 9 (D.N.J. Dec. 19, 2022). Further, the arbitration provision in *Harper* was much broader, expressly covering disputes "related to" plaintiff's employment. *See id*. at *2. Here, the Agreement's provision only covers "any controversy or claim arising out of the Agreement," not any controversy or claim between the parties concerning Plaintiff's employment.

Defendants' reliance on *Mike v. Strauss* is similarly misplaced. There, the court held that the arbitration provision covered plaintiff's retaliatory discharge claim because the parties agreed to arbitrate all "disagreements, claims, questions or controversies which may arise out of *or relate to* the [employment] agreement." 889 F. Supp. 746, 755 (S.D.N.Y. 1995). *See BAE Sys.*, 566 F. App'x at 504 (finding arbitration provision did not cover FCA retaliation claim because it only covered disputes arising "under the terms of this agreement" and did not include claims "related" to the agreement or that arise out of the relationship between the parties); *see also NCR Corp. v. Korala Associated, Ltd.,* 512 F.3d 807, 812, 814 (6th Cir. 2008) (where arbitration clause covered "any controversy or claim arising out of or related to" the agreement, "the cornerstone of our inquiry rests upon whether we can resolve the instant case without reference to the agreement containing the arbitration clause."); *Panepucci v. Honigman Miller Schwartz & Cohn LLP,* 281 F. App'x. 482, 486 (6th Cir. 2008) (employment discrimination claims arbitrable as "a controversy or claim arising under or related to" employment agreement); *Gillespie v. Colonial Life & Acc.*

*Ins. Co.*, No. CIV.A. 08-689, 2009 WL 890579, at *9 (W.D. Pa. Mar. 30, 2009) ("the breadth of the arbitration clause is sufficiently wide that the arbitration clause is certainly susceptible to an interpretation that a dispute concerning retaliation, and claims related thereto, are included in "every claim, controversy or dispute *arising out of or related to* this Agreement...") (emphasis added).

Because Plaintiff's FCA retaliation claim relates to his *qui tam* lawsuit and can be litigated without reference to the Agreement it exists independently from the Agreement. The arbitration clause does not cover this dispute.

    3.    *Plaintiff is Bringing the Retaliation Claim as a Private Representative of the Government, Not Solely as an Employee.*

"The case of a *qui tam* relator is fundamentally different from the case of others seeking to avoid arbitration, because the relator has acted for the public rather than for himself." *Nguyen v. City of Cleveland*, 138 F. Supp. 2d 938, 939 (N.D. Ohio 2001). Indeed, Plaintiff, as a relator, acted for the public rather than himself when he filed the *qui tam* lawsuit to recover damages on behalf of the United States alleging that the Ferriera Defendants[1] submitted materially false and fraudulent applications for federal Paycheck Protection Program loans in violation of the FCA.

Thus, Plaintiff's retaliation claim – against PKFOD for suspending him at the Ferreira Defendants' behest -- is brought as a private representative of government, not just in his capacity as an employee. Although usually FCA retaliation claims are usually asserted against a relator's employer (which employer is also the defendant in the *qui tam* lawsuit), Plaintiff brought his *qui tam* lawsuit against the Ferreira Defendants, certain of which were former clients of PKFOD. The Ferriera Defendants informed PKFOD that Plaintiff had sued them, and made false accusations of wrongdoing against Plaintiff, inducing PKFOD to suspend him. Compl. ¶¶ 12-15. Plaintiff pleads a straightforward claim of retaliation under the FCA, which does not limit such claims to retaliatory acts by a relator's employer. *See, e.g., Nguyen v. City of Cleveland*, 121 F. Supp. 2d 643, 649 (N.D. Ohio 2000) (FCA retaliation provision "reaches an employer who discriminates against an employee, at the behest of or on behalf of another, when it is the other that seeks to retaliate against the employee for protected conduct.")

In sum, this dispute should not be compelled to arbitration. Plaintiff intends to oppose Defendants' Motion to Dismiss or Motion to Stay in favor of arbitration if the Court permits such a motion to be filed.

    Respectfully submitted,

    SPIRO HARRISON & NELSON

    /s/*Eric H. Jaso*
    Eric H. Jaso

---

[1] The "Ferriera Defendants" are the named defendants in Plaintiff's *qui tam* lawsuit: Ferreira Construction Co., Inc., American Pile and Foundation LLC, Valiant Energy Services LLC, Valiant Power Group, Inc., d/b/a SM Electric, and Nelson Ferreira. *United States of America, ex. rel. CLIP LLC v. Ferriera Construction Co., et al*. Docket No. 3:23-cv-0384-GC-JBD.