# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL ANDRIOLA, C.P.A.** | **Civ. A. No. 3:25-cv-1908-GC-JBD** |
| **Plaintiff,** | |
| **v.** | |
| **PKFOD HOLDINGS, LLC, PKF O'CONNOR DAVIES, LLP, and PKF O'CONNOR DAVIES ADVISORY, LLC,** | |
| **Defendants.** | |

---

## BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT

---

Eric H. Jaso
SPIRO HARRISON & NELSON
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
(973) 232-0881
Attorneys for Plaintiffs
Michael Andriola, C.P.A.

i

## **TABLE OF CONTENTS**

STATEMENT OF FACTS..........................................................................i

LEGAL ARGUMENT .............................................................................3

I.    THE AGREEMENT'S ARBITRATION PROVISION DOES NOT
      COVER PLAINTIFF'S FCA RETALIATION CLAIM ...........................3

                  A.    Arbitration of this Claim Would
                  not Align with the Aims of the Federal
                  Arbitration Act...........................................4

                  B.    Plaintiff's FCA Retaliation Claim
                  Exists Independently from his
                  Employment Agreement............................5

                  C. Since the FCA Retaliation Claim
                  Exists Independently from the
                  Agreement, the Arbitration Provision is
                  Not Susceptible to an Interpretation that
                  Covers the Asserted Dispute ..................10

CONCLUSION....................................................................................11

# TABLE OF AUTHORITIES

CASES                                                                          PAGE

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ....................................3

*Guidotti v. Legal Helpers Debt Resol*, 716 F.3d 764 (3d Cir. 2013)........................4

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......................................4

*U.S. ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352 (6th Cir. 2022) ...... *passim*

*U.S. ex rel. Paige v. BAE Sys. Tech. Sols. & Servs., Inc.*, 566 F. App'x 500 (6th
  Cir. 2014)............................................................................................... 5, 6, 7, 8

*Mikes v. Strauss*, 889 F. Supp. 746 (S.D.N.Y. 1995) ................................................8

*NCR Corp. v. Korala Associated, Ltd.*, 512 F.3d 807 (6th Cir. 2008) .....................8

*Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x. 482 (6th Cir.
  2008).......................................................................................................................8

*Gillespie v. Colonial Life & Acc. Ins. Co.*, No. CIV.A. 08-689, 2009 WL 890579
  (W.D. Pa. Mar. 30, 2009) ...................................................................................9

*Battaglia v. McKendry*, 233 F.3d 720 (3d Cir. 2000)...................................... 10, 11


RULES

Fed. R. of Civ. P. 56...................................................................................................2

Fed. R. of Civ. P. 12...................................................................................................2

31 U.S.C. § 3730(h) ................................................................................................6, 8

SHN\965492.1

## **STATEMENT OF FACTS**

Plaintiff Michael Andriola is a Certified Public Accountant and was a partner at Defendant PKF O'Connor Davies, LLP ("PKFOD LLP"), as well as a member of PKFOD Holdings, LLC and PKF O'Connor Davies Advisory, LLC (collectively, "PKFOD"). Compl. ¶¶ 22, 34. At all relevant times, Plaintiff worked in PKFOD's Cranford, New Jersey office. *Ibid.* Plaintiff began as a partner at PKFOD in July of 2018, and his responsibilities included providing accounting services to various clients, including entities owned and controlled by John Doe ("Doe") (the "Doe Entities").[1] *See id.* at ¶ 3.

In 2021, while conducting a routine audit of Doe Entity 13, one of the Doe Entities, Plaintiff discovered that Doe Entity 13 had obtained a Paycheck Protection Program ("PPP") loan in 2020. *Id.* at ¶¶ 6, 7. Based on his knowledge of PPP loan eligibility requirements, Plaintiff determined that Doe Entity 13, as part of the larger Doe corporate group, was ineligible for such loans due to its size in both headcount and finances. *Id.* at ¶¶ 8, 46. Plaintiff raised his concerns with Doe management, and

---

[1] This brief references the proposed Amended Complaint, which replaces references to actual individuals and entities with pseudonyms, and summarizes his allegations, in compliance with Plaintiff's obligations in the settlement of certain claims against such individuals and entities in a separate lawsuit. The substantive allegations and claims in the Amended Complaint remain the same, with the exception of Defendant's formal termination of Plaintiff on August 4, 2025.

1

included a note in Doe Entity 13's audited financial statement warning that the loan might not be forgiven. *Id.* at ¶¶ 46-48.

Plaintiff subsequently learned that other Doe Entities had also obtained PPP loans under similar circumstances. *Id.* at ¶ 9. In July of 2023, through a limited liability company he had formed, Plaintiff filed a qui tam lawsuit against certain Doe Entities under the False Claims Act (FCA). *Id.* at ¶ 49. The lawsuit alleged these Doe Entities fraudulently obtained over $9 million in PPP loans by omitting material information about their affiliations and falsely certifying their eligibility, and also that they made false certifications to obtain forgiveness for those loans. *Id.* at ¶¶ 42-49. The Government declined to intervene in the lawsuit, and Plaintiff proceeded with the litigation. *Id.* at ¶ 11.

Meanwhile, on November 10, 2024, Plaintiff and PKFOD entered into a new Partner Services Agreement ("the Employment Agreement" or "the Agreement") on November 10, 2024. (Manisero Cert. ¶ 8 & Exh. 8). That agreement provided that the parties would resolve "any controversy or claim arising out of this Agreement . . . by arbitration before a single arbitrator administered in accordance with the then current Employment Arbitration Rules of the American Arbitration Association[.]" *Ibid.*

2

Thereafter, in December of 2024, counsel for the Doe Entities informed PKFOD of the qui tam action and accused Plaintiff of improperly using confidential and privileged information obtained during his work for the Doe Entities. *Id.* at ¶ 12. PKFOD management confronted Plaintiff with the allegations and demanded explanations. *Id.* at ¶ 13.

Despite Plaintiff's counsel explaining that Plaintiff had not violated any professional or ethical rules, on January 31, 2025, PKFOD suspended Plaintiff indefinitely without pay or benefits, citing alleged professional and ethical violations. *Id.* at ¶¶ 14-15. Since the suspension, PKFOD has made statements to clients and colleagues that Plaintiff was simply on a leave of absence, leading to speculation about his professional and personal circumstances, and thereby damaging his decades-built professional reputation. *Id.* at ¶¶ 16, 59. On or about August 4, 2025, PKFOD formally terminated Plaintiff, retroactive to January 31, 2025. *Id*. at ¶ 17.

## **LEGAL ARGUMENT**

### I. THE AGREEMENT'S ARBITRATION PROVISION DOES NOT COVER PLAINTIFF'S FCA RETALIATION CLAIM

At the threshold, it should be noted that Defendants' brief argues this court must utilize the standard under Federal Rule of Civil Procedure 56, as opposed to that of Rule 12(b)(6), in evaluating whether a valid arbitration agreement existed in

this case under the Agreement. *See* Defs. Br. at 8-11. Plaintiff does not dispute that a valid arbitration agreement existed under the Agreement. Rather, Plaintiff simply asserts the arbitration agreement is not applicable in the context of this case, and that its scope does not extend to Plaintiff's retaliation claims under the FCA.

As such, the sole question for this court is whether a disagreement about a "concededly binding contract applies to [this] particular type of controversy[.]" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). As discussed presently, it does not.

### A. Arbitration of this Claim Would Not Align with the Aims of the Federal Arbitration Act

While expedition is an effect of the Federal Arbitration Act ("the FAA"), "speed is not the sole or even the dominant goal of the FAA." *Guidotti v. Legal Helpers Debt Resol*, 716 F.3d 764, 773 (3d Cir. 2013). Rather, "reject[ing] the suggestion that the overriding goal of the [FAA] was to promote the expeditious resolution of claims," the Supreme Court identified a main aim of the FAA as facilitating "the enforcement of private agreements." (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 221 (1985)). Indeed, in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), the Supreme Court noted simply that "the 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements

4

are enforced according to their terms.'" *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

Here, the enforcement of a private agreement is not at issue. Rather, Plaintiff's claims exist independently from his Employment Agreement such that the concededly valid arbitration provision therein is wholly inapplicable. As such, the denial of Plaintiff's right to a jury trial would be inconsistent with the principal purpose of the FAA. *See id.*

### B. Plaintiff's FCA Retaliation Claim Exists Independently from His Employment Agreement.

Defendants have conceded that "courts outside this Circuit have admittedly refused to compel arbitration when a Plaintiff is alleging both a qui tam and 31 U.S.C. § 3730(h) retaliation cause of action against the defendant employer." ECF No. 7 at 3. Indeed, the Sixth Circuit has held that an arbitration provision does *not* cover a plaintiff's FCA retaliation claim because the claim exists independently from the employment agreement. *See, e.g.*, *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 355-56 (6th Cir. 2022) (affirming District Court holding that an FCA retaliation claim has "nothing to do with" the employment agreement itself: "[T]he arbitration clause in the present case, which covers only disputes arising from or connected with the Employment Agreement, plainly does not cover

5

plaintiff's FCA retaliation claim"); *see also, e.g., U.S. ex rel. Paige v. BAE Sys. Tech. Sols. & Servs., Inc.*, 566 F. App'x 500, 504 (6th Cir. 2014).

In *BAE Systems*, the parties' arbitration agreement covered "any dispute arising under the terms of this agreement." 566 Fed. Appx. at 504. The court found that the language of the agreement's arbitration provision as written did "not contemplate an FCA retaliation claim" and that the relator's claim was "beyond the scope of the arbitration provision[.]" *Id.* at 505. As such, compelled arbitration [was] inappropriate." *Ibid.* Indeed, the court determined that finding otherwise would have "effectively rewritten the parties['] agreement" in a way that would broaden it beyond what the parties intended. *Id.* at 504.

Similarly, here, a determination that the arbitration agreement in this case covers Plaintiff's FCA retaliation claims would be akin to rewriting the parties' agreement. *See ibid.* Plaintiff's arbitration agreement is limited to "any controversy or claim arising out of [the] Agreement." (Manisero Cert. ¶ 8 & Exh. 8). Interpreting such language to cover Plaintiff's claims under the FCA would essentially rewrite the Agreement to say it covers, for example, "any controversy relating to your employer," which this court does not have discretion to do. *See BAE Systems*, 566 Fed. Appx. at 504.

Further, Plaintiff's FCA claim is purely statutory and "exists independently

of the Agreement." *Id.* at 503. The anti-retaliation provision of the FCA provides:

> Any employee, contractor, or agent shall be entitled to all relief
> necessary to make that employee, contractor, or agent whole, if that
> employee, contractor, or agent is discharged, demoted, suspended,
> threatened, harassed, or in any other manner discriminated against in
> the terms and conditions of employment because of lawful acts done by
> the employee, contractor, agent or associated others in furtherance of
> an action under this section or other efforts to stop 1 or more violations
> of this subchapter.

31 U.S.C. § 3730(h)(1).

And here, as in *BAE Systems*, "[t]he FCA retaliation claim is not a claim for violation

of the Employment Agreement; it is completely separate from the contract and

asserts an independent claim that would exist even without the contract." 566 Fed.

Appx. at 504. As emphasized by the *BAE Systems* court, the Agreement in this case

"nowhere refers to the FCA, retaliation[,] or statutory claims," so reading such

references or intent into the Agreement would be inappropriate. *Ibid.*; *Cf. Turi v.

Main Street Adoption Serv.*, 633 F.3d 496, 511 (6th Cir. 2011) (holding RICO claim

not arbitrable because it was statutorily based and not referred to in arbitration

clause); *Simon v. Pfizer Inc.*, 398 F.3d 765, 776 (6th Cir. 2005) (holding ERISA and

COBRA claims not within scope of arbitration provision where agreement did not

refer to either.)

Further, in *Dorsa*, the arbitration agreement's language was even more broad than in this case, and the District Court's determination that the arbitration agreement did not cover the plaintiff's claims under the FCA was still affirmed. *Dorsa*, 33 F.4th at 355-56. Indeed, there the arbitration clause covered "any dispute, claim[,] or disagreement arising out of *or in connection with*" the employment agreement. *Id.* at 355 (emphasis added). But here, the Employment Agreement is narrower, covering only "any controversy or claim arising out of [the] Agreement." (Manisero Cert. ¶ 8 & Exh. 8). As such, if the interpretation of the arbitration provision's language in *Dorsa* resulted in the FCA retaliation claims falling outside the scope of the agreement, the same should logically occur here given the relevant provision in *Dorsa* was even broader than that of this case. *See id.*; *Dorsa*, 33 F.4th at 355.

Defendants' reliance on *Mikes v. Strauss*, 889 F. Supp. 746 (S.D.N.Y. 1995) is misplaced. There, the court held that the arbitration provision covered Plaintiff's retaliatory discharge claim because the parties agreed to arbitrate all "disagreements, claims, questions or controversies which may arise out of *or relate to* the [employment] agreement." 889 F. Supp. 746, 755 (S.D.N.Y. 1995).

Rather, as mentioned, the terms of the arbitration agreement here are much narrower and do not include disputes that may "relate to" or "in connection with"

8

the Agreement. *See Dorsa*, 33 F.4th at 355; *BAE Sys.*, 566 F. App'x at 504 (finding arbitration provision did not cover FCA retaliation claim because it only covered disputes arising "under the terms of this agreement" and did not include claims "related" to the agreement or that arise out of the relationship between the parties); *see also NCR Corp. v. Korala Associated, Ltd.*, 512 F.3d 807, 812, 814 (6th Cir. 2008) (where arbitration clause covered "any controversy or claim arising out of or related to" the agreement, "the cornerstone of our inquiry rests upon whether we can resolve the instant case without reference to the agreement containing the arbitration clause."); *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x. 482, 486 (6th Cir. 2008) (employment discrimination claims arbitrable as "a controversy or claim arising under or related to" employment agreement); *Gillespie v. Colonial Life & Acc. Ins. Co.*, No. CIV.A. 08-689, 2009 WL 890579, at *9 (W.D. Pa. Mar. 30, 2009) ("[T]he breadth of the arbitration clause is sufficiently wide that the arbitration clause is certainly susceptible to an interpretation that a dispute concerning . . . retaliation, and claims related thereto, are included in 'every claim, controversy[,] or dispute arising out of or related to this Agreement[.]'").

9

### C. Since the FCA Retaliation Claim Exists Independently from the Agreement, the Arbitration Provision is Not Susceptible to an Interpretation that Covers the Asserted Dispute.

Defendant's reliance on *Battaglia v. McKendry*, 233 F.3d 720 (3d Cir. 2000), is misplaced; indeed, that case militates in Plaintiff's favor. There, the Third Circuit espoused an interpretation of "arising under" language in arbitration provisions of agreements. *Id.* at 724-27. The clause at issue there was similar to that of this case – it required arbitration of any controversy that "arises hereunder," and the issue surrounding the scope of the arbitration clause centered on whether the arbitration provision covered alleged duress committed in the formation of the agreement containing the arbitration provision at issue. *Id.* at 724-25.

The court found that arbitration of grievances should be denied where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 725 (quoting *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986)). The court concluded that when phrases like "arising under" appear in arbitration provisions, they are "generally construed to encompass claims going to the formation of the underlying agreements." *Id.* at 727. It determined that the underlying claims of duress and improper influence were covered by the asserted dispute because they were alleged to have occurred during the actual formation of the settlement agreement. *Ibid.*

10

*Battaglia*'s holding on this issue is, therefore, not applicable here and the case is clearly distinguishable. Indeed, unlike *Battaglia* where claims of duress related directly to the formation of the relevant agreement containing the arbitration provision, Plaintiff's FCA claims here do not "[go] to the formation of the underlying agreements," but rather stem from entirely separate events, wholly unrelated to Plaintiff's Employment Agreement or his entrance into it. *See id.* at 727.

## CONCLUSION

Ultimately, the arbitration provision in this case does *not* cover Plaintiff's FCA retaliation claim because it is *not* a controversy or claim arising out of the Agreement. *Dorsa*, 33 F.4th at 356 (arbitration clause failed to encompass retaliation claim which "does not arise out of or in connection with" the employment agreement). Rather, the retaliation claim arises from (and relates to) Plaintiff's pending qui tam lawsuit before this Court, as Defendants acknowledge. ECF No. 7 at 1 n.1. Moreover, the arbitration provision in the Agreement does not contain the language "related to," further evidencing Plaintiff's claim exists independently from the Agreement.

11

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to compel arbitration and deny Defendants' motion to dismiss the complaint.

Respectfully submitted,

SPIRO HARRISON & NELSON
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
(973) 232-0881
Attorneys for Plaintiff
Michael Andriola

By: _____
         Eric H. Jaso

Dated:  October 24, 2025

12