<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MICHAEL ANDRIOLA, C.P.A,<br><br>Plaintiff,<br><br>v.<br><br>PKFOD HOLDINGS, LLC *et al.*,<br><br>Defendants. | Civil Action No. 25-01908 (GC) (JBD)<br><br><u>**MEMORANDUM OPINION**</u> |

<u>**CASTNER, District Judge**</u>

  **THIS MATTER** comes before the Court upon Defendants PKFOD Holdings LLC, PKF O'Connor Davies, LLP, and PKF O'Connor Davies Advisory, LLC's Motion to Compel Arbitration. (ECF No. 26.) Plaintiff Michael Andriola, C.P.A., opposed and Defendants replied. (ECF Nos. 27, 28.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED**.

## I.      BACKGROUND

### A.      Factual Background[1]

#### 1.      *Partnership Agreements*

In 2018, Plaintiff—a Certified Public Accountant (CPA)—became a partner at accounting firm PKF O'Connor Davies, LLP (PKFOD LLP), a Defendant.  (ECF No. 26 ¶ 1.)[2]  In becoming a partner, Plaintiff signed several agreements, one of which included an agreement to mediate and arbitrate disputes.  (*Id.* ¶ 3.)  The relevant provision in the 2018 Agreement states:

> *Any and all disputes, controversies and claims arising out of or relating to this Agreement*, or concerning the respective rights or obligations hereunder of the parties hereto, as well as the rights and obligations of the parties under the Non-solicitation Agreement or the Income Partner Earnings Agreement, all entered into as of the 9th day of July, 2018, *shall be settled and determined by arbitration*[.]

---

[1]      "Motions to compel arbitration are treated either as motions to dismiss or motions for summary judgment."  *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 324 (3d Cir. 2022); *see also Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 317-18 (3d Cir. 2024).  Defendants have indicated they are seeking summary judgment to compel arbitration.  (ECF No. 26.)  On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party."  *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).  Local Civil Rule 56.1(a) requires parties to furnish statements of material facts on motions for summary judgment.  Defendants' Statement of Material Facts is at ECF No. 26 at 3-15.  Plaintiff has not responded or filed a counterstatement, despite being directed to do so by the Court (ECF No. 29), and as such, Defendants' Statement of Material Facts is deemed undisputed.  *Walker v. Roman*, Civ. No. 14-1182, 2016 WL 5934692, at *2 (D.N.J. Oct. 12, 2016) ("Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement.").

[2]      Defendants filed their Motion, Rule 56.1 Statement of Material Facts, and supporting certifications together in one document, ECF No. 26.  For clarity, all citations to paragraphs of ECF No. 26 refer to the Defendants' Statement of Material Facts found at pages 3-15 of ECF No. 26.  In response to an Order from the Magistrate Judge (ECF No. 32), Defendants filed exhibits referenced in support of this Motion at ECF No. 34.

(*Id.* (emphasis added).)  On November 10, 2024, Plaintiff entered into another distinct agreement with PKFOD LLP, agreeing to arbitrate any controversy or claim involving PKFOD LLP (the 2024 Agreement).  (*Id.* ¶¶ 36-37.)

Also on November 10, 2024, Plaintiff entered into a Partner Services Agreement (2024 PSA) with another one of the Defendants, PKFOD Holdings, LLC (PKFOD Holdings).[3]  (*Id.* ¶ 32.)  The 2024 PSA included a provision stating that a partner "shall not engage in any other business, profession or occupation for compensation or otherwise that would conflict or interfere with the rendition of such services, either directly or indirectly, without the prior written consent of the Board[.]"  (*Id.* ¶ 33.)  The 2024 PSA includes a provision waiving jury trial, which states: "EACH PARTY HEREBY IRREVOCABLY, UNCONDITIONALLY AND VOLUNTARILY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT."  (*Id.* ¶ 34 (emphasis in original).)  It also includes an arbitration clause that reads:

> Each of the parties irrevocably and unconditionally agrees that in the event *any controversy or claim arising out of this Agreement* cannot be settled between the parties to the satisfaction of the parties, *such controversy or claim shall be settled by arbitration* before a single arbitrator administered in accordance with the then current Employment Arbitration Rules of the American Arbitration Association (the "Arbitration Rules").  No legal measures shall be taken except to enforce such arbitration and the award of the arbitrator unless otherwise provided by the Arbitration Rules or determined by the arbitrator.

(*Id.* ¶ 35 (emphasis added).)

---

[3]    PKFOD Holdings is a Delaware limited liability company and the parent company of PKFOD LLP as well as another Defendant, PKF O'Connor Davies Advisory, LLC.  (ECF No. 25 ¶ 24.)

### 2.      *PPP Loan Advising*

In June 2020, Rema Tip Top of North America, Inc. (RTTNA), a client of PKFOD LLP, asked Defendants about obtaining government-guaranteed Paycheck Protection Program (PPP) loans. (*Id.* ¶ 25; *id.* at 24.) Plaintiff was considered a specialist regarding PPP loans, and as such was involved in advising this client regarding PPP loans. (*See id.* ¶ 25.) PKFOD LLP also provided accounting services to corporations owned or controlled by individual Nelson Ferreira.[4] (*Id.* ¶ 4.) Plaintiff was the relationship partner and most senior accountant providing services for the Ferreira corporations. (*Id.*) In conducting a financial statement audit in 2021, Plaintiff alleges he discovered one of Ferreira's corporations had obtained a PPP loan. (*Id.* ¶¶ 6-7.) Plaintiff asserts that the Ferreira corporation did not qualify for the PPP loan, so he brought the issue to the attention of the Ferreira corporation's management. (*Id.* ¶¶ 8-9.) However, no communication regarding this issue was documented in the audit work papers, which Plaintiff was responsible for maintaining as the relationship partner. (*Id.* ¶ 10.) Plaintiff also contends that he informed another partner at PKFOD LLP that the Ferreira corporation was ineligible for a PPP loan, but that partner denies such a conversation occurred. (*Id.* ¶¶ 12-13.) The Ferreira corporation's audited financial statements included a note indicating the PPP loan might not be forgiven, but the note did not indicate the corporation was ineligible to receive the loan. (*Id.* ¶¶ 15-16.)

### 3.      *Qui Tam Lawsuits and Termination*

On June 2, 2023, Plaintiff formed a limited liability company, CLIP LLC, in Delaware. (*Id.* ¶ 17.) On July 18, 2023, CLIP LLC filed a *qui tam* lawsuit against the Ferreira corporations

---

[4]      Although the Amended Complaint (AC) anonymizes references to individual and corporate entities named in Plaintiff's *qui tam* lawsuits, (ECF No. 25), Defendants' Motion does not (*see* ECF Nos. 26, 28). As such, the Court refers to the entities as they appear in Defendants' Statement of Material Facts and notes its prior Order that "any references to those [entities] by name in future filings in this action will not provide a sufficient basis for a motion to seal." (ECF No. 24.)

that received PPP loans, alleging they violated the False Claims Act (FCA).  (*Id.* ¶ 18.)  The Government declined to intervene, and Plaintiff proceeded to litigate the case himself.[5]  (*Id.* ¶ 19.)

On September 11, 2023, Plaintiff formed another limited liability company, SCISSORS LLC, in Delaware.  (*Id.* ¶ 26.)  On September 29, 2023, SCISSORS LLC filed a *qui tam* lawsuit against three RTTNA companies.  (*Id.* ¶ 27.)  The Government intervened and the case settled for $13 million.  (*Id.* ¶¶ 28-29.)  Plaintiff was awarded a relator fee of $2.34 million and attorney's fees of over $54,000.  (*Id.* ¶ 30.)

On December 17, 2024, Defendants learned of the Ferreira *qui tam* lawsuit when the Ferreira corporations' counsel asked Defendants to search their files for potentially privileged communications that Plaintiff may have accessed on Defendants' computer systems.  (*Id.* ¶ 20.) PKFOD LLP subsequently suspended Plaintiff on January 31, 2025 because "Plaintiff's actions were inconsistent with his contractual and ethical duties as a PKFOD partner."  (*Id.* ¶¶ 21-22.)  On March 17, 2025, Plaintiff filed the present lawsuit against Defendants for whistleblower retaliation under the FCA.  (*Id.* ¶ 23.)  PKFOD LLP terminated Plaintiff on August 12, 2025.  (*Id.* ¶ 24.) Defendants learned of the RTTNA *qui tam* lawsuit after August 15, 2025, when RTTNA informed PKFOD LLP it was moving its accounting and audit business to another firm.  (*Id.* ¶ 31.)

## B.    Procedural Background

On March 17, 2025, Plaintiff filed his original Complaint.  (ECF No. 1.)  After the Court granted leave, (ECF No. 24), Plaintiff filed an Amended Complaint (AC) on November 3, 2025.[6] (ECF No. 25.)  The AC asserts three causes of action.  (*Id.* ¶¶ 61-74.)  Count One alleges retaliation

---

[5]    The parties later stipulated to dismissal of the action.  (ECF No. 28-1 at 4.)

[6]    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3732, and 28 U.S.C. § 1367.

in violation of the False Claims Act, 31 U.S.C. § 3730(h) (*id.* ¶¶ 61-63), Count Two alleges retaliation and violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J. Stat. Ann. 34:19-1 *et seq.* (*id.* ¶¶ 64-70), and Count Three alleges wrongful discharge (*id.* ¶¶ 71-74). On November 11, 2025, Defendants filed the present Motion for Summary Judgment to Compel Arbitration. (ECF No. 26.) Plaintiff opposed (ECF No. 27), and Defendants replied (ECF No. 28).

## II.    **LEGAL STANDARD**

The Federal Arbitration Act (FAA) "establishes a strong federal policy in favor of compelling arbitration over litigation." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 396 (3d Cir. 2020) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000)). "The Third Circuit has adopted a two-tiered framework for assessing motions to compel arbitration," under which "a court must ensure that: (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the agreement's scope." *Matczak v. Compass Grp. USA, Inc.*, Civ. No. 21-20415, 2022 WL 557880, at *1 (D.N.J. Feb. 24, 2022).

District courts can evaluate motions to compel arbitration as either motions to dismiss or motions for summary judgment. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 317-18 (3d Cir. 2024); *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 324-25 (3d Cir. 2022). To determine which standard is appropriate, the Third Circuit set forth the following test:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain

a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal citations omitted).  "The centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents."  *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019).

Defendants have made their Motion as one for summary judgment.  (*See* ECF No. 26.)  "[I]f a complaint does not set forth clearly that the claims are subject to an arbitration agreement, or if the plaintiff rebuts the motion to compel 'with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement,' then the court should apply the Rule 56 standard."  *Young*, 119 F.4th at 319 (quoting *Guidotti*, 716 F.3d at 774).  The AC does not mention or rely upon the arbitration agreement, (ECF No. 25), which requires this Court to look to documents outside the pleadings in considering whether the parties agreed to arbitrate this dispute.  Both parties rely on documents appended to Defendants' Motion in their briefs.  (*See* ECF Nos. 26, 27, 28.)  As such, the Court must apply the Rule 56 standard to Defendants' Motion to Compel Arbitration.[7]  *See Matczak*, 2022 WL 557880, at *2.

---

[7]     The parties have not engaged in discovery regarding arbitrability.  Defendants argue that discovery is not necessary for the Court to decide this Motion under the Rule 56 standard because the only issue before the Court is the "scope" of the arbitration clause, which is a legal, not factual, question.  (ECF No. 26 at 29-30.)  The Court agrees.  Discovery is not always necessary for the court to consider a motion to compel arbitration under Rule 56.  *Young*, 119 F.4th 319-20; *see also Matczak*, 2022 WL 557880, at *3 (analyzing motion to compel arbitration under Rule 56 and stating "there is no factual dispute that Plaintiff executed the [a]rbitration [a]greement. Accordingly, no further discovery on this question is required").  Plaintiff does not dispute the Statement of Material Facts proffered by Defendants and concedes the 2024 PSA, appended to the Motion before the Court, is valid.  (*See generally* ECF No. 27; *id.* at 6-7.)  The dispute herein focuses on the applicability of the 2024 PSA to Plaintiff's claims, and this Court is the proper body to interpret that agreement as the 2024 PSA does not include a clause delegating questions of arbitrability to an arbitrator.  *Affordable Dentures-Audubon, Michelle Aitken, DDS, P.A. v. Affordable Care, LLC*, Civ. No. 17-12136, 2018 WL 2134037, at *7 (D.N.J. May 9, 2018) ("Absent a delegation clause providing that an arbitrator will decide issues of arbitrability, the

Under Rule 56, summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). The Court must grant summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous: the party 'must point to concrete evidence in the record'—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)).

---

Court will decide whether particular claims are subject to arbitration in accordance with the applicable agreement."); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("If, on the other hand, the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently.") (emphasis in original).

8

III.    **DISCUSSION**

Congress enacted the FAA, 9 U.S.C. § 1 *et seq.*, to thwart "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Pursuant to the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. When there is a contract between the parties that provides for arbitration, there is "an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). However, "[n]otwithstanding the well-established policy in favor of arbitration, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Arakelian v. N.C. Country Club Ests. Ltd. P'ship*, Civ. No. 08-5286, 2009 WL 4981479, at *7 (D.N.J. Dec. 18, 2009) (quoting *AT & T Tech., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986)).

Defendants argue that the 2024 PSA compels arbitration in this matter. (ECF No. 26 at 26-27.)[8] Plaintiff does not dispute that the 2024 PSA is a valid arbitration agreement. (ECF No. 27 at 7.) As such, the core dispute between the parties is whether the 2024 PSA applies to Plaintiff's claims. (ECF No. 26 at 30; ECF No. 27 at 7.)

A.    **Plaintiff's Claims Fall Within the Scope of the 2024 PSA**

To determine whether a dispute falls within the scope of an arbitration clause, a court "'begin[s] by 'carefully analyz[ing] the contractual language' in the arbitration clause at issue." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014) (second alteration in

---

[8]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

original) (quoting *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs,* 982 F.2d 884, 888 (3d Cir.1992)).  The relevant clause in the 2024 PSA reads: "[e]ach of the parties irrevocably and unconditionally agrees that in the event *any controversy or claim arising out of this Agreement* cannot be settled between the parties to the satisfaction of the parties, *such controversy or claim shall be settled by arbitration*[.]"  (ECF No. 34-2 at 34 (emphasis added).)

Defendants argue that the language of the arbitration agreement in the 2024 PSA encompasses Plaintiff's claims in this case, including Plaintiff's FCA retaliation claim.  (ECF No. 26 at 33-40.)  Defendants contend that Plaintiff's lawsuit is a "controversy arising from" the 2024 PSA because the claims focus on the motivation behind Plaintiff's suspension and termination, and thus require consideration of the 2024 PSA governing the terms and conditions of Plaintiff's employment.  (*See id.* at 35-36; ECF No. 28 at 8, 11.)  Plaintiff responds that his claims exist independently from the 2024 PSA and as such, the arbitration clause therein is inapplicable.  (ECF No. 27 at 8.)  Plaintiff asserts that interpreting the arbitration clause to cover his claims would rewrite the 2024 PSA, which is impermissible.  (*Id.* at 9.)

Defendants rely on *Battaglia v. McKendry*, 233 F.3d 720 (3d Cir. 2000), to support their interpretation of the arbitration clause.  (*See* ECF No. 26 at 34-36.)  The clause in the agreement at issue *Battaglia* read "in the event that *any controversy arises hereunder*, venue in Philadelphia, Pennsylvania with the American Arbitration Association is appropriate for the resolution of such controversy."  233 F.3d at 723 (emphasis added).  The parties in that case disputed whether this clause applied to claims regarding the formation of the agreement.  *Id.* at 724-25.  The court found that the clause was sufficiently broad to apply to that dispute.  *Id.* at 725.  The Third Circuit held that "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction, and are generally construed to encompass claims

going to the formation of the underlying agreements." *Id.* at 727.  Defendants argue that pursuant to *Battaglia*, the arbitration clause in the 2024 PSA should also be constructed broadly, meaning that Plaintiff's claims "arise out of" the agreement and are subject to arbitration.  (ECF No. 26 at 35-36.)  Plaintiff concedes that the arbitration clause at issue in this matter is similar to that in *Battaglia* but argues that the *Battaglia* court's reading of the arbitration clause was limited to the specific claim alleged in that case about "the formation of the underlying agreements."  (ECF No. 27 at 13.)  Because Plaintiff's claims do not relate to the formation of the 2024 PSA, Plaintiff asserts that *Battaglia* is not controlling.  (*Id.* at 14.)

However, outside of the specific context of a claim regarding formation of the underlying agreement, the *Battaglia* court also explained that "[i]n construing the scope of an arbitration clause, courts generally operate under a pronounced 'presumption of arbitrability'" which "is particularly applicable where the arbitration clause at issue is broad."  233 F.3d at 725.  Additionally, *Battaglia* has been applied in this circuit to read other arbitration clauses broadly in the context of claims apart from those focused on the formation of the agreement.[9]  *See, e.g.*, *In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148, 158-59 (3d Cir. 2022) (citing *Battaglia* in holding that clause subjecting "any controversy, claim or dispute arising out of or relating to [the agreement]" to arbitration encompassed party's antitrust claims); *Lloyd v. MBNA Am. Bank, N.A.*,

---

[9]   Plaintiff also argues that the arbitration clause in the 2024 PSA is too narrow to include his claims, as it only applies to controversies or claims "arising out of this Agreement" rather than any disputes arising out of *or* in connection with the agreement, which has been interpreted more broadly.  (ECF No. 27 at 11-12 (citing *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 355-56 (6th Cir. 2022); *Mikes v. Strauss*, 889 F. Supp. 746, 755 (S.D.N.Y. 1995); *NCR Corp. v. Korala Associated, Ltd.*, 512 F.3d 807, 812, 814 (6th Cir. 2008); *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x. 482, 486 (6th Cir. 2008); *Gillespie v. Colonial Life & Acc. Ins. Co.*, Civ. No. 08-689, 2009 WL 890579, at *9 (W.D. Pa. Mar. 30, 2009)).)  This argument is unpersuasive; the Third Circuit in *Battaglia* held that "arising out of" language by itself is given a broad construction.  *See* 233 F.3d at 724-25, 727.

11

27 F. App'x 82, 85 (3d Cir. 2002) (citing *Battaglia* in holding that arbitration clause covering claims "arising from or relating in any way to this [a]greement" included the plaintiff's Truth in Lending Act claims); *Sheth v. Artech LLC*, Civ. No. 25-1205, 2025 WL 1588021, at *1, *5 (D.N.J. June 5, 2025) (citing *Battaglia* in holding that arbitration clause covering "any dispute in any matter related to [e]mployee's employment with [the defendant]" applied to the plaintiff's Family and Medical Leave Act and New Jersey Family Leave Act claims).    Therefore, the Court agrees that "[p]articularly expansive interpretations will be given to arbitration provisions if they subject claims to arbitration using broad phrases such as 'arising under'" and "[s]uch phrases are generally construed to encompass claims beyond breach of the contract itself." *Square Enters. Corp. v. Agros Nova Sp. Z.o.o*, Civ. No. 06-3270, 2007 WL 2990761, at *2 (D.N.J. Oct. 9, 2007) (quoting *Battaglia,* 233 F.3d at 727); *see also Travelers Indem. Co. of Am. v. Ebner Industrieoffenbau Gmbh*, Civ. No. 22-6175, 2023 WL 3615241, at *3 (D.N.J. May 24, 2023) ("As explained by the Third Circuit, New Jersey [c]ourts have generally read the terms 'arising out of' or 'relating to' [in] a contract as indicative of an extremely broad agreement to arbitrate any dispute relating *in any way* to the contract.") (alterations and emphasis in original) (internal quotations omitted).

The Third Circuit has clarified that "[t]o determine whether a claim falls within the scope of an arbitration agreement, the 'focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint.'" *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (quoting *Svedala Indus., Inc.,* Civ. No. 96-4538, 1996 WL 590861, at *3 (E.D. Pa. 1996)).    Plaintiff brings three claims: a retaliatory discharge claim under the FCA, a retaliatory discharge CEPA claim, and a wrongful discharge claim.  (ECF No. 25 ¶¶ 61-74.)  The elements of a retaliatory discharge claim under the FCA are that (1) the plaintiff engaged in protected conduct and (2) the plaintiff was retaliated against *because of* that protected

conduct. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001).  That second prong involves a showing that the plaintiff's employer (1) knew he was engaged in "protected conduct" and (2) the employer's retaliation was motivated by the plaintiff's engaging in protected conduct.  *Id.*  The elements of a CEPA retaliatory discharge claim are similar, requiring a plaintiff to show "(1) he engaged in statutorily protected conduct; (2) his employer took 'retaliatory action' against him after or contemporaneous with that protected conduct; and (3) a causal connection exists between his protected conduct and his employer's actions."  *Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 608 (D.N.J. 2003).  And lastly, "'[t]o establish a case for common law wrongful discharge, the employee must identify the clear mandate of public policy and that the discharge itself was in violation of that public policy.'"  *Dillin v. Constr. & Turnaround Servs., LLC*, Civ. No. 14-8124, 2015 WL 5545236, at *8 (D.N.J. Sep. 18, 2015) (quoting *Brangan v. Ball Plastic Container Corp.,* Civ. No. 11-5470, 2012 WL 1332663, at *7 (D.N.J. Apr. 17, 2012)).

Plaintiff alleges that Defendants retaliated against him by suspending and terminating him for his protected conduct, in violation of the FCA and CEPA, (ECF No. 25 ¶¶ 61-70), and Defendants' actions constitute wrongful discharge in violation of public policy, (*id.* ¶¶ 71-74).  Defendants assert that they terminated Plaintiff's employment because he breached the terms of the 2024 PSA.  (ECF No. 26 ¶¶ 21-24, 33 (citing ECF No. 34-2 at 29-30 (2024 PSA provisions regarding duties and responsibilities of partners).)  The "factual underpinnings" of all three claims concern the events surrounding Plaintiff's suspension and termination, including the motivation behind those decisions.   The 2024 PSA includes provisions specifying the duties and responsibilities Plaintiff owed to Defendants as well as a section detailing that employment may

be terminated "by the Company for Cause upon providing written notice to the Partner."[10]  (ECF No. 34-2 at 29-30, 31.)   Disputes regarding whether Plaintiff complied with the duties and responsibilities required by the 2024 PSA, and whether he was terminated for "Cause" under the 2024 PSA, are disputes "arising out of th[e] Agreement."  As such, Plaintiff's claims "arise out of" the 2024 PSA, making them arbitrable.  This holding is consistent with other courts in this district, which have found that when parties' agreements include an arbitration clause with broad language *and* the factual underpinnings of the claim at issue align with claims covered by the arbitration agreement, the claims at issue are arbitrable.  *See, e.g.*, *Travelers Indem. Co. of Am.*, 2023 WL 3615241, at \*3, \*4 (holding that where arbitration clause covered claims "arising out of or relating to this contract," the plaintiff's tort claims were arbitrable "in light of the broadly worded Arbitration Clause and because Plaintiff's tort and contract claims share the [same] factual underpinnings"); *Square Enters. Corp.*, 2007 WL 2990761, at \*1-2 & n.1 (holding that arbitration clause for "[a]ny disputes arising under this [a]greement" encompassed the plaintiff's claims regarding trademark violations and unfair competition because "these claims feel closely related to the contract, and this [c]ourt must resolve any doubts in favor of arbitration"); *see also Gilchrist v. Inpatient Med. Servs., Inc.*, Civ. No. 09-02345, 2010 WL 3326742, at \*2 (N.D. Ohio Aug. 23, 2010) ("[G]iven that the agreement defined [the plaintiff's] employment relationship with [the defendant] and the claims in this case arise out of his termination, the entire controversy unquestionably falls within the [a]rbitration [p]rovision's scope.").

---

[10]     "Cause" is defined in the 2024 Agreement, which appears to be incorporated into the 2024 PSA by reference.  (ECF No. 34-2 at 29.)  It is defined as (1) an act of gross negligence or willful misconduct in the course of providing services, (2) misappropriation of assets, (3) a breach of fiduciary duty or an act or omission that constitutes fraud, embezzlement, or theft, (4) a conviction of pleading "guilty" or "no contest" to a felony or crime involving moral turpitude, (5) a material violation of any of Defendants' written policies, or (6) a material breach of an agreement between Defendants and the partner.  (ECF No. 34-2 at 51.)

### B.    FCA Claims Are Arbitrable

Plaintiff also argues that his FCA retaliation claim in particular "exists independently from" the 2024 PSA because it is a statutory cause of action. (*See* ECF No. 27 at 8-12.) However, Plaintiff cites no language in the FCA that prevents such claims from being arbitrated. (*See* ECF No. 27.) And the Supreme Court has held that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA," including claims brought under the Sherman Act, 15 U.S.C. §§ 1-7; § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2). *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Courts have also held that "[f]ederal civil rights claims can be subject to mandatory arbitration." *Marina Bay Towers Urb. Renewal II, L.P. v. City of N. Wildwood*, Civ. No. 09-369, 2009 WL 2147356, at *3 n.6 (D.N.J. July 14, 2009)); *Gilmer*, 500 U.S. at 35 (holding arbitration clause in plaintiff's employment agreement was enforceable for plaintiff's Age Discrimination in Employment Act claim); *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x. 482, 483, 488-89 (6th Cir. 2008) (affirming district court's decision that plaintiff's agreement to arbitrate claims "arising under or related to" that agreement included plaintiff's employment discrimination claims). The Supreme Court has emphasized that "[i]n these cases we recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer*, 500 U.S. at 26 (second alteration in original) (quoting *Mitsubishi,* 473 U.S. at 628). The Court finds the same reasoning should apply to Plaintiff's claims brought under the FCA.

Plaintiff further argues that the Sixth Circuit has held that FCA retaliation claims are not subject to arbitration. (ECF No. 27 at 8-10 (citing *United States ex rel Paige v. BAE Sys Tech.*,

15

566 F. App'x 500 (6th Cir. 2014); *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352 (6th Cir. 2022).)  Defendants counter that courts have held the other way, and there is no language in the FCA that claims under the statute can only be entertained by a court of law.  (ECF No. 26 at 32, 39 (citing *Mikes v. Strauss*, 889 F. Supp. 746, 755 (S.D.N.Y. 1995); *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746 (S.D. Ohio 2002)).)

Defendants also point to the Third Circuit's reasoning  in *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488 (3rd Cir. 2014), where the court held that retaliation claims under the Dodd-Frank Act were arbitrable.  (ECF No. 26 at 32-33.)  In *Khazin*, the Third Circuit reasoned that the omission of an anti-arbitration provision for retaliation claims in the Dodd-Frank Act by Congress was deliberate, as an anti-arbitration provision was included for other claims under the Act.  773 F.3d at 493.  "This legislative choice must be respected, especially in light of the 'liberal federal policy favoring arbitration agreements' embodied in the Federal Arbitration Act."  *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983)).  Plaintiff does not address this case and the Court finds it instructive.

The parties have not identified any Third Circuit caselaw specifically considering whether an FCA retaliatory discharge claim can be subject to arbitration, and "the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit."  *United States v. Maury*, 695 F.3d 227, 259 n.27 (3d Cir. 2012).  Moreover, the Court finds the Sixth Circuit's ruling in *Bae Systems* is factually distinguishable.  There, the court held that the plaintiffs' FCA retaliation claim was not subject to arbitration because the arbitration clause was limited to disputes arising "under the terms" of the agreement.  566 F. App'x at 503-04.  Here, the language of the arbitration clause is more expansive and includes "any controversy or claim arising out of this Agreement."  *Compare id.* at 504 (stating that the arbitration provision in that case was narrower than in those

16

cases addressing a broadly-worded arbitration clause), *with Battaglia*, 233 F.3d at 723, 727 (finding that arbitration clause for "any controversy aris[ing]" under the agreement was broad enough to encompass disputes "relating to" the agreement). Given the Third Circuit's reasoning in *Khazin*, its broad reading of similar arbitration clauses, *see Battaglia*, 233 F.3d at 725, the strong presumption in favor of arbitrability, and the lack of caselaw exempting FCA retaliation claims from arbitration in this Circuit,[11] the Court finds that Plaintiff's FCA retaliation claim is subject to arbitration pursuant to the 2024 PSA.[12]

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Compel Arbitration (ECF No. 26) is **GRANTED**. An appropriate Order follows.

Dated: April 30, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[11]    The Court also notes that in *Dorsa* the Sixth Circuit did not consider the substance of the district court's finding that the employment agreement mandating arbitration for disputes "arising out of or in connection with" the agreement did not cover plaintiff's FCA retaliation claim, as it affirmed the decision solely on the procedural ground that the defendant forfeited argument on this question. 33 F.4th at 355, 358-59.

[12]    In the alternative, Defendants also argue that the 2018 Agreement compels arbitration. (ECF No. 26 at 26-27.) The 2018 Agreement provides that the parties agree to arbitrate "[a]ny and all disputes, controversies and claims arising out of or relating to this Agreement, or concerning the respective rights or obligations hereunder of the parties hereto[.]" (ECF No. 34-2 at 7.) This language is even broader than the 2024 PSA's agreement to arbitrate "any controversy or claim arising out of this Agreement[.]" (*Id.* at 34.) However, because the parties agree that the 2024 PSA is a valid and enforceable (ECF No. 27 at 8), there is no need for the Court to also evaluate the 2018 Agreement.

17